UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>DANA LEE JORDAN,<br><br>  Defendant. | Case No. 2:23-cr-00222-AKB<br><br>**MEMORANDUM DECISION AND ORDER MOTION TO DISMISS INDICTMENT** |

Pending before the Court is Defendant Dana Lee Jordan's Motion to Dismiss Indictment (Dkt. 29). Having reviewed the record and the parties' submissions, the Court finds that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] For the reasons discussed below, the Court denies Defendant's motion to dismiss; grants the Government's motion to set the case for trial; and denies Defendant's motion to stay proceedings.

---

[1] While this case is a criminal case, the local civil rule regarding hearings applies because there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f); *see United States v. Rush*, No. 22-cr-00045-DCN, 2024 WL 2245574, at *1 n.1 (D. Idaho May 16, 2024) (citing local rules as basis for declining to hold hearing on pending criminal motion).

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

On August 15, 2023, Defendant Dana Lee Jordan was indicted for unlawful possession of a firearm under 18 U.S.C. § 922(g)(9) (Dkt. 2). Section 922(g)(9) makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm. The indictment alleges that Jordan possessed a 20-gauge shotgun while knowing he had previously been convicted of a misdemeanor crime of domestic violence (Dkt. 2). The record shows the Magistrate Court for Bonner County, Idaho, entered a judgment of misdemeanor conviction for Battery—Domestic Violence in February 2001 (Dkt. 37-2 at 1).

On March 15, 2024, Jordan filed a motion to dismiss the indictment (Dkt. 29). Shortly after the parties briefed the motion, the Ninth Circuit issued its decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), addressing the constitutionality of § 992(g)(1). This Court ordered supplemental briefing on that decision. In response, the Government filed an unopposed motion to hold Jordan's motion to dismiss in abeyance until the Ninth Circuit issued its en banc decision in *Duarte*, and this Court granted that motion (Dkts. 46, 48, 49). On May 9, 2025, the Ninth Circuit issued its en banc decision and held that § 922(g)(1) "is not unconstitutional as applied to non-violent felons." *United States v. Duarte*, 137 F.4th 743, 748 (9th Cir. 2025) (en banc) ("*Duarte*"). Thereafter, the Court again ordered supplemental briefing, which the parties have now provided (Dkts. 52-54).

## II. LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

**MEMORANDUM DECISION AND ORDER - 2**

Fed. R. Crim. P. 12(b)(1). A motion to dismiss is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Although the court may make preliminary factual findings necessary to decide legal questions presented by a motion, the court may not invade the jury's province. *Id*. "A motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citation modified). Under this standard, "the district court must decide the issue raised in the pretrial motion before trial if it is entirely segregable from the evidence to be presented at trial." *Id.* (citation modified).

A defendant may seek dismissal of an indictment on the grounds that the statute authorizing the charge is unconstitutional. Such a challenge may be either a facial or an as-applied attack to the statute's constitutionality. To succeed on a facial attack, the moving party must demonstrate "no application of the statute could be constitutional." *Sabri v. United States*, 541 U.S. 600, 609 (2004). A facial challenge is the "most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Conversely, an as-applied challenge is based on a developed factual record and the statute's application to the defendant. *Spence v. Washington*, 418 U.S. 405, 414 (1974).

**MEMORANDUM DECISION AND ORDER - 3**

### III. ANALYSIS

Jordan asserts § 922(g)(9) is unconstitutional in violation of the Second Amendment both facially and as applied to him. The Second Amendment to the United States Constitution provides that "a well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." This right is not absolute—the government may regulate the possession of firearms if the regulation is "consistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). Congress has placed certain limitations on the right to possess firearms under 18 U.S.C. § 922.

The limitation at issue in this case, § 922(g)(9), prohibits anyone "who has been convicted in any court of a misdemeanor crime of domestic violence" from transporting, receiving, or possessing a firearm or ammunition. As the Eighth Circuit explained, "[t]he belief underpinning § 922(g)(9) is that people who have been convicted of violence once—toward a spouse, child, or domestic partner, no less—are likely to use violence again." *United States v. Bernard*, 136 F.4th 762, 765 (8th Cir. 2025). Because "domestic abusers present an ongoing threat of physical violence, keeping the most lethal weapon out of their hands is vital to the safety of their relatives." *Id.* (citation modified).

Section 922(g)(9), however, does not necessarily apply to all misdemeanor domestic violence crimes. Rather, a "misdemeanor crime of domestic violence" under § 922(g)(9) is defined as one having as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon," against another person with whom the offender has a familial, intimate, or cohabitation relationship. § 921(a)(33)(A)(ii). Further, § 921(a)(33) provides a person is not

convicted of a misdemeanor for purposes of § 922(g)(9) under certain circumstances including, for example, if the conviction has been expunged or set aside, if the person has been pardoned or had his civil rights restored, or if five years has elapsed since the latter of the conviction or the completion of the punishment. § 921(a)(33)(B)(ii), (C).

The Supreme Court in *Bruen* articulated a two-step analysis for determining whether a firearm regulation, such as § 922(g)(9), is constitutional. *Bruen*, 597 U.S. at 17. Under the first step, a court considers whether "the Second Amendment's plain text covers an individual's conduct." *Id.* If the Second Amendment applies, then "the Constitution presumptively protects that conduct." *Id.* Then, under the second step, the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24; *see also United States v. Rahimi*, 602 U.S. 680, 692 (2024) (explaining analysis under second step).

A.     **The Second Amendment's Plain Text**

The plain text of the Second Amendment extends the right "to keep and bear Arms" to "the people." U.S. CONST. AMEND. II. The Ninth Circuit has previously held in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) *abrogated on other grounds by Bruen*, 597 U.S. at 17, that domestic violence misdemeanants charged with violating § 922(g)(9) are among "the people" the Second Amendment protects. *Chovan*, 735 F.3d at 1137 ("[W]e conclude that by prohibiting domestic violence misdemeanants from possessing firearms, § 922(g)(9) burdens rights protected by the Second Amendment."). The Government argues that *Bruen* abrogated this ruling (Dkt. 37 at 4). After *Bruen*, however, the Ninth Circuit in *United States v. Perez-Garcia*, 96 F.4th 1166, 1180

(9th Cir. 2024), concluded pretrial releasees "are among 'the people' within the meaning of the Second Amendment's 'bare text.'" *Id.* at 1180 (citing *Bruen*, 597 U.S. at 44 n.11). Specifically, the Ninth Circuit noted that "we have already held that at least one group of misdemeanants—specifically, domestic violence misdemeanants—is 'entitled to some measure of Second Amendment protections.'" *Id.* (citing *Chovan* as abrogated on other grounds).

Because the Ninth Circuit relied on *Chovan* in *Perez-Gomez* after *Bruen*, this Court concludes the rule in *Chovan* that the Second Amendment protects a domestic violence misdemeanant remains binding authority. Moreover, *Rahimi* and *Duarte* support the conclusion that the Second Amendment protects domestic violence misdemeanants. The Supreme Court in *Rahimi* assumed people subject to domestic violence restraining orders are among the people the Second Amendment protects, and the Ninth Circuit's decision in *Duarte* concluded that non-violent felons are among the protected people. *Rahimi*, 602 U.S. at 692-93 (skipping first step and assuming protection); *Duarte*, 137 F.4th at 753 (concluding non-violent felon "undoubtedly a member of the national community" presumptively protected by Second Amendment). These rulings suggest that—like people subject to domestic violence restraining orders and non-violent felons—the Second Amendment protects a domestic violence misdemeanant. *See, e.g.*, *United States v. Gailes*, 118 F.4th 822, 826 (6th Cir. 2024) (concluding *Rahimi* supports conclusion that Second Amendment protects domestic violence misdemeanant).

The Government also argues that the Second Amendment protects only "law-abiding, responsible citizens" (Dkt. 37 at 6). The Supreme Court appears to have rejected this argument in *Rahimi*, however. Specifically, the Court "reject[ed] the Government's contention that Rahimi

**MEMORANDUM DECISION AND ORDER - 6**

may be disarmed simply because he is not 'responsible.'" *Rahimi*, 602 U.S. at 701. In doing so, the Court explained that "'responsible' is a vague term. It is unclear what such rule would entail." *Id.* Further, the Ninth Circuit in *Duarte* concluded that the Second Amendment protected a felon, despite that a felon could be described as nonlaw-abiding. 137 F.4th at 754 n.7. For these reasons, the Court rejects the Government's argument that the Second Amendment only protects responsible, law-abiding citizens and concludes the Second Amendment protects domestic violence misdemeanants like Jordan.

**B.      Nation's Historical Tradition of Firearm Regulations**

Having determined the Second Amendment protects domestic violence misdemeanants, the second step is to determine whether the Government has shown that § 922(g)(9) is consistent with this Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 17. Since Jordan filed his motion to dismiss, the Supreme Court has clarified the methodology for this analysis in *Rahimi*. It explained that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692. This analysis requires ascertaining whether the challenged regulation "is relevantly similar to the laws that our tradition is understood to permit." *Id.* (citation modified). "Why and how the regulation burdens the right are central to this inquiry." *Id.* Although "a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* (citation modified). A challenged regulation "need not be a 'dead ringer' or a 'historical twin'" to comport with the principles underlying the Second Amendment. *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

Applying this analysis, the *Rahimi* Court addressed whether § 922(g)(8) is consistent with the Nation's historical tradition of firearm regulation. *Rahimi*, 602 U.S. at 693. Specifically, the Court addressed whether § 922(g)(8)(C)(i) is constitutional under the Second Amendment. Section § 922(g)(8)(C)(i) bars an individual from possessing a firearm if he is subject to a domestic violence restraining order based on a finding that he poses a credible threat to the physical safety of the protected person. In resolving the constitutional question, the Court stated that "by the 1700s and early 1800s . . . two distinct legal regimes had developed that specifically addressed firearms violence." *Rahimi*, 602 U.S. at 694-95. First, the Court identified "the surety laws," which required "individuals suspected of future misbehavior," including spousal abuse, to post a bond as a means of preventing future violence. *Id.* at 695. Second, the Court identified "going armed" laws, which "prohibited riding or going armed, with dangerous or unusual weapons to terrify" people. *Id.* at 697 (citation modified). The Court reasoned that "taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. Based on this reasoning, the Court concluded § 922(g)(8)(C)(i) "fits neatly within the tradition the surety and going armed laws represent" and "within our regulatory tradition." *Id.* Because the Nation's tradition of firearm regulation allows the Government to disarm individuals who present a credible threat of physical safety to others, the Court held § 922(g)(8) is constitutional. *Rahimi*, 602 U.S. at 700.

Jordan disputes that the analysis in *Rahimi* supports a conclusion that § 922(g)(9) is constitutional. He attempts to distinguish § 922(g)(8) from § 922(g)(9) on two bases. First, he argues that § 922(g)(9) "impos[es] a lifelong, no-exceptions ban on possessing *any* firearm for *any*

**MEMORANDUM DECISION AND ORDER - 8**

reason," in contrast to § 922(g)(8) which provides only for "temporary" disarmament (Dkt. 54 at 7-8). This argument, however, ignores § 921(a)(33), which provides that a domestic violence misdemeanant is "not disqualified" from possessing a firearm "if 5 years have elapsed from the later of the judgment of conviction or the completion of the person's custodial or supervisor sentence." § 921(a)(33)(C). Further, § 921(a)(33) also provides for other means by which a misdemeanant can avoid disarmament. § 921(a)(33)(B)(ii); *see also United States v. Jackson*, 138 F.4th 1244, 1254 (10th Cir. 2025) (relying on § 921(a)(33)(B)(ii) to conclude not all applications of § 922(g)(9) are permanent); *Bernard*, 136 F.4th at 766 (same); *Gailes*, 118 F.4th at 829 (same). Because § 921(a)(33) provides means by which a domestic violence misdemeanant can possess a firearm, § 922(g)(9) provides for only conditional disarmament in many applications, and a conditional disarmament is clearly a lesser restriction than a permanent ban under § 922(g)(1), which the Ninth Circuit in *Duarte* held is constitutional *See, e.g.*, *Jackson*, 138 F.4th at 1254 (noting conditional disarmament clearly a lesser restriction than under § 922(g)(1)).

Second, Jordan argues that, unlike § 922(g)(8), § 922(g)(9) does not require an "individualized determination" of a credible threat but rather "it only requires a conviction" (Dkt. 54 at 7-8). This argument, however, ignores that a charge under § 922(g)(9) requires an individualized assessment of whether the underlying misdemeanor included an element of "the use or attempted use of physical force, or the threatened use of a deadly weapon." § 921(a)(33)(A)(ii). Further, to the extent Jordan's argument is that § 922(g)(9) does not require an individualized assessment of a credible *future* threat, numerous courts have explained that the "underpinning of § 922(g)(9) is that people who have been convicted of [domestic] violence once . . . are likely to

**MEMORANDUM DECISION AND ORDER - 9**

use violence again." *Bernard*, 136 F.4th at 765. In other words, "§ 922(g)(9) disarms persons who posed a past threat of physical violence *and* pose a present threat of physical violence due to high rates of recidivism." *Id.*; *see also Gailes*, 118 F.4th at 829 ("[S]omeone who posed a risk in the past does not mean they no longer do so. Scholars agree that . . . the recidivism rate for domestic-violence offenders is high.").

Based on the foregoing, this Court rejects Jordan's arguments that § 922(g)(9) is facially unconstitutional. Rather, it agrees with the Fourth, Sixth, Eighth, and Tenth Circuits that § 922(g)(9) is not facially unconstitutional. *See Jackson*, 138 F.4th at 1255 (ruling § 922(g)(9) survives constitutional challenge); *United States v. Nutter*, 137 F.4th 224, 231 (4th Cir. 2025) (same); *Bernard*, 136 F.4th at 766 (same); *Gailes*, 118 F.4th at 830 (same). As the Sixth Circuit reasoned, if someone who is merely accused of committing domestic violence can be disarmed under § 922(g)(8) without offending the Second Amendment, as the Supreme Court held in *Rahimi*, "then *a fortiori* someone with a valid conviction can also be disarmed" under § 922(g)(9). *Gailes*, 118 F.4th at 829. Further, the conclusion that § 922(g)(9) is facially constitutional comports with the conclusion in *Duarte* that historically legislatures have "consistently disarmed entire categories of people who were presumed to pose a special risk of misusing firearms." 137 F.4th at 760-61 (quoting *Range v. Att'y Gen. U.S.*, 124 F.4th 218, 273 (3d Cir. 2024) (Krause, J., concurring)); *see also Rahimi*, 602 U.S. at 698 (declining to rule categorical bans on firearm possession by those deemed "to present a special danger of misuse" violate the Second Amendment).

**MEMORANDUM DECISION AND ORDER - 10**

Jordan also argues that § 922(g)(9) is unconstitutional as applied to him. He argues that recidivism rationale underpinning § 922(g)(9) is inapplicable to him because he has had no "domestic violence or weapon-related offenses" since he was convicted of domestic violence in February 2001 (Dkt. 54 at 6, 10). In support, Jordan cites to his pretrial services report, which is the only evidence in the record regarding his criminal history (Dkt. 21). Although Jordan is technically correct that this report does not identify any domestic violence or weapon offenses, the report does suggest potential ongoing domestic issues, including convictions for violating protection orders in 2010, 2011, and 2015 (*id.* at 5-6). Further, the report suggests ongoing violence issues, including a conviction for assault in 2013 and arrests for battery in 2021 and 2023 (*id.* at 6). Based on this record, the Court disagrees Jordan is not a recidivism risk.

Jordan also argues that a twenty-two-year ban on his right to possess a firearm "far exceeds what the historical tradition allowed" (Dkt. 54 at 8). Jordan, however, is only prohibited from possessing a firearm unless and until he satisfies one of the conditions in § 921(a)(33). As a result, the ban under § 922(g)(9) is conditional. *See, e.g.*, *Jackson*, 138 F.4th at 1254 ("Given the various ways by which [the defendant's] Second Amendment right may be restored, [his] penalty was conditional and not necessarily permanent."); *Nutter*, 137 F.4th at 233 (rejecting defendant's temporal argument that "the length of time an individual may be prohibited from possessing a firearm" makes § 922(g)(9) unconstitutional); *Gailes*, 118 F.4th at 829 (explaining "purported permanent ban . . . may not always be so"). Moreover, Jordan does not address § 921(a)(33) or why he has not and cannot satisfy any condition permitting him to possess a firearm. *See United States v. Hammond*, 656 F. Supp. 3d 857, 865 (S.D. Iowa 2023) (holding as-applied challenge

requires defendant to prove his prior misdemeanor conviction for domestic violence was insufficient to qualify under § 922(g)(9); *United States v. Peppers*, No. 3:24-cr-87, 2024 WL 5202640, at *4 (N.D. Ohio Dec. 23, 2024) (rejecting defendant's as-applied challenge that his prior convictions did not qualify as misdemeanor crimes of domestic violence). Jordan's "conditional disarmament is clearly a lesser restriction than a permanent ban, the constitutionality of which was upheld post-*Rahimi*." *Jackson*, 138 F.4th at 1254 (citation modified); *Duarte*, 137 F.4th at 762 (holding permanent disarmament under § 922(g)(1) constitutional). For these reasons, Jordan's as-applied challenge fails.

## IV. ORDER

**IT IS ORDERED that:**

1. Defendant Dana Lee Jordan's Motion to Dismiss Indictment (Dkt. 29) is **DENIED**.

2. Trial is scheduled for **November 3, 2025,** based on the time remaining under the Speedy Trial Act.

DATED: September 18, 2025

Amanda K. Brailsford
U.S. District Court Judge